

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 23, 2023

**BY ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

**Re:**    *United States v. Jamil Hakime*, **22 Cr. 699 (AT)**

Dear Judge Torres:

The Government respectfully requests that the Court enter the Government's proposed protective order in this case (the "Protective Order"), which is attached hereto as Exhibit A. The Government's Protective Order is applicable to the entirety of the Government's discovery production. (*See* Ex. A ¶ 1). Notably, the Protective Order does not limit the defendant's ability to review any of the discovery material with his counsel. The Government understands that the defendant opposes the breadth of the Protective Order on the grounds that the order should be narrowed to apply only to a subset of discovery materials that, in the defendant's view, directly implicates privacy and/or safety interests. Such a narrow protective order would allow the defendant to publicly disseminate discovery materials that were outside the scope of the order.

Under Federal Rule of Criminal Procedure 16(d)(1), "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." The good cause standard "requires courts to balance several interests, including whether dissemination of the discovery materials inflicts hazard to others . . . whether the imposition of the protective order would prejudice the defendant," and "the public's interest in the information." *United States v. Smith*, 985 F. Supp. 2d 506, 522 (S.D.N.Y. 2013).

There is good cause for the entry of the Protective Order. This case involves, among other things, the trafficking of firearms by the defendant to two other individuals, Christopher Brown and Matthew Mahrer, who appear to have been engaged in coordinated efforts to threaten and attack one or more unidentified Jewish institutions in Manhattan. Brown and Mahrer have since been charged under New York State law by the Manhattan District Attorney's Office—Brown has been charged

with making terroristic threats and weapon possession offenses and Mahrer has been charged with a weapon possession offense.

The discovery that the Government intends to produce to the defendant is voluminous, relates to serious criminal activity, and is intrinsically linked to both ongoing federal and state investigations. The defendant's proposal would require the Government to go through each discovery document and to designate each document as subject to the protective order or not.  As previously noted, the Government's discovery in this case is voluminous and consists of approximately 760 gigabytes of data, including, among other things, seven electronic devices, seven search warrants and search warrant returns, audio recordings, and extensive law enforcement case files. (Dkt. No. 12).  Further, the Government's discovery includes documents related to the ongoing state prosecutions of Brown and Mahrer.   Under these circumstances, "it would be virtually impossible, let alone unduly burdensome, for the Government to conduct a page-by-page, document-by-document review to single out those portions of the discovery materials that must be shielded from the public and the media." *Smith*, 985 F. Supp. 2d at 545–46.  Due to the voluminous nature of the discovery, the serious criminal conduct charged in this case, and the ongoing federal and related state investigations, a comprehensive protective order would allow the Government to produce discovery in a manner that would protect these ongoing criminal investigations, while ensuring that the defendant can expeditiously review discovery with his counsel.  *See id.* (finding good cause to impose a "a blanket protective order" because of the Government's "compelling interest in ongoing investigations into potentially serious criminal conduct that could be jeopardized by dissemination of the discovery" and noting that this "interest is in several investigations that cover different targets, different crimes, and different time periods.")

The Government's Protective Order is also not unduly burdensome on the defense, nor would it impede the defense's efforts to prepare for trial.  For the majority of the discovery materials, the Protective Order would simply prevent the defendant from publishing the material to third parties or using it for any purpose other than in connection with this case.  For a small portion of materials, including certain materials belonging only to Mahrer and Brown, the Protective Order allows the Government to mark such materials, if appropriate, as "Sensitive Disclosure Material," which simply means that the defendant would have to review those materials with his attorney and could not keep his own copy of those records while incarcerated.  Thus, as noted above, the Protective Order does not limit the discovery materials that can be reviewed by the defendant with counsel.  *See Smith*, 985 F. Supp. 2d at 544 (imposing blanket protective order where defendants "have not substantiated their allegations that a protective order here would be unduly burdensome."); *see also United States v. Davis*, 809 F.2d 1194, 1210 (6th Cir. 1987) (rejecting defendant's objection to protective order for failure to "demonstrate substantial prejudice"); *United States v. Carriles*, 654 F. Supp. 2d 557, 566 (W.D. Tex. 2009) (noting that "a court must consider whether the imposition of the protective order would prejudice the defendant").

Accordingly, the Government respectfully submits that there is good cause for entering the Protective Order.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____

Sarah L. Kushner
Mitzi S. Steiner
Assistant United States Attorney
(212) 637-2676/-2284