UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------    x
                                                          :
UNITED STATES OF AMERICA                                  :
                                                          :
            - v -                                         :          22 Cr. 699 (AT)
                                                          :
JAMIL HAKIME,                                             :
                                                          :
                        Defendant.                        :
------------------------------------------------------    x

## SENTENCING MEMORANDUM ON BEHALF OF
## JAMIL HAKIME

> DAVID PATTON, ESQ.
> Federal Defenders of New York, Inc.
> Attorney for Defendant
> JAMIL HAKIME
> 52 Duane Street - 10th Floor
> New York, New York 10007
> Tel.: (212) 417-8737
>
> MARTIN S. COHEN
> *Of Counsel*

TO:    DAMIAN WILLIAMS, Esq.
       United States Attorney
       Southern District of New York
       One. St. Andrew's Plaza
       New York, New York 10007
       Attn:   MITZI STEINER & SARAH KUSHNER, ESQS.
               Assistant United States Attorneys

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

July 6, 2023

*By ECF*

Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

Re:    *United States v. Jamil Hakime*, 22 Cr. 699 (AT)

Dear Judge Torres:

Jamil Hakime well recognizes the seriousness of his conduct. *See* letter of Mr. Hakime, attached as Exhibit A. By committing this offense, Mr. Hakime has undone *decades* of accomplishments: he had overcome a very difficult ███████ upbringing; had settled into a steady and well-paying job working for the Administration for Children's Services; was in a loving and committed relationship; and had – along with his partner – bought a home in the Poconos, which Mr. Hakime had carefully rebuilt. *See* letter of Irene Market, attached as Exhibit B. Much of this laudable history has now been shattered by Mr. Hakime's terrible decision to participate in this crime.

While it is difficult, if not impossible, to square Mr. Hakime's conduct here with his otherwise impressive background and characteristics, it is not necessary to impose additional incarceration to satisfy any of the purposes of sentencing, especially given the extra-punitive nature of the almost eight months of incarceration that Mr. Hakime has served.

For the reasons described below, we respectfully request that the Court impose a sentence of time-served, to be followed by a two-year term of supervised release. If the Court finds, however, that some additional punitive sanction is required, we respectfully request that the Court impose a *within-guidelines* sentence of time-served, with the special condition that Mr. Hakime spend the first six-weeks of supervised release under home detention. *See* U.S.S.G. § 5C1.1(d) (where applicable guidelines range is in Zone C, the term of imprisonment may be satisfied by a sentence of imprisonment that includes "a term of supervised release with a condition that substitutes community confinement or home detention . . . provided that at least one-half of the minimum term is satisfied by imprisonment.").

Honorable Analisa Torres                                                                    Page 2
July 6, 2023

Re:    *United States v. Jamil Hakime*, 22 Cr. 699 (AT)

## I.    The Standard.

The Guidelines range is but one of many factors set forth in 18 U.S.C. § 3553(a) that a district court is to consider when imposing sentence.  *See generally United States v. Booker*, 543 U.S. 220 (2005).  In every case, the sentencing court "must make an individual assessment based on the facts presented."  *Gall v. United States*, 128 S.Ct. 586, 597 (2007).[1]

## II.    The Sentencing Factors.

### A.    Mr. Hakime's background and characteristics, along with the other factors set forth at 18 U.S.C. § 3553(a), strongly support the requested sentence.

Jamil Hakime was born in 1964 in Puerto Rico. His parents separated shortly after Jamil was born, and neither parent wanted to raise him. Instead, he was shipped off to be raised by his maternal grandmother and her elderly aunt in Haiti. Jamil never had a close relationship with either parent, who both passed away earlier this year while Mr. Hakime was incarcerated.

Jamil's grandmother provided a stable home for him, and he lived with her until her death when he was a young teenager.

Every year or so, Jamil would be sent to New York to spend time with his mother. But these visits were always difficult, and as he grew older,

After Jamil's grandmother died, he was sent to New York to live with his mother. He was around 15 years old.

unsurprisingly became caught up in the criminal justice system. He was first arrested at the age of 16 for petit larceny, spent months at the notorious Spofford Juvenile Center, and was ultimately incarcerated from 1986 to 1990. After his release, however, *over 30 years ago*, Mr. Hakime turned the corner: he went back to school and held a series of good jobs. Indeed, after his release, his only arrest prior to December 2022 was for failing to pay for the subway.

Jamil got his GED while incarcerated, and after his release from prison in 1990, earned a bachelor's degree from Touro College. Over the next decade, Jamil held a variety of jobs – as a flight attendant, at a homeless shelter, working for Goodwill. *See* PSR ¶¶ 77-82. He also began a master's program at Yeshiva University in social work. In around 2014, he began working for

---

[1] The advisory guidelines-range in this case is 10 to 16 months' imprisonment, based on an offense level of 12 and a criminal history category of I.

Honorable Analisa Torres                                                                    Page 3
July 6, 2023

Re:     *United States v. Jamil Hakime*, 22 Cr. 699 (AT)

the Administration for Children's Services ("ACS"), a New York City agency. He held several positions there, most recently as an administrator.

    In around 2017, Jamil began dating Irene Market, and they have been in a committed relationship ever since. *See* Ex. B, letter of Ms. Market. In 2019, they bought a house together in the Poconos, where Jamil "spent countless hours and dedicated effort in building our home, updating and fixing anything that needed to be repaired to make it beautiful and exceptional." *Id.* Ms. Market explains that Jamil "has a bright future ahead if given the chance. We have built a wonderful relationship and I truly care for him as the love of my life . . . . I truly believe Jamil recognizes and deeply regrets the poor choices he has made and, if given the opportunity, he will work hard to leave his past behind him for bigger and better outcomes in life." *Id.*

    Mr. Hakime was arrested in this case on December 2, 2022, and has been incarcerated ever since. The conditions of confinement at the MDC over the past eight months have been brutal. Mr. Hakime has been subject to constant lockdowns, restricted visitation, inedible and unhealthy foods (such as near frozen bologna or peanut-butter and jelly sandwiches for lunch *and* dinner), as well as the near cessation of most positive programming.[2]

    Mr. Hakime's experience has been particularly difficult because he suffers from sleep apnea. *See* PSR ¶ paragraph 67. And while the MDC provided him with a CPAP machine, he often was unable to use it because he was not provided with distilled water, without which the machine cannot function. (Untreated sleep apnea is associated with increased risk of cardiovascular disease and even death. A recent Johns Hopkins study found that when patients did not wear their CPAP machines, the "resulting apnea caused a spike in blood sugar, heart rate, blood pressure, and stress hormones." *See* Johns Hopkins Medicine, *The Dangers of Uncontrolled Sleep Apnea*.[3]) Moreover, both his mother and father passed away during his incarceration.

    Despite the brutal conditions, Mr. Hakime has tried to make the best of it. He is planning on working in real estate upon his release, and has been spending his time reading up on the industry and making plans for rebuilding his career.

    In sum, Mr. Hakime's background and characteristics strongly support the requested sentence.

---

[2] The term "lockdown" does not capture how harsh an experience it is – inmates are locked in their small cells, where there is a bunkbed, toilet, and virtually no room to move around, for often 23 hours a day, and these lockdowns can extend for weeks at a time. Inmates have to eat in their cells, inches away from the shared toilet, and there is virtually no ability to exercise. When there is no running water, which happens frequently, inmates are unable to even flush the toilet.

[3] Available at: https://www.hopkinsmedicine.org/health/wellness-and-prevention/the-dangers-of-uncontrolled-sleep-apnea.

Honorable Analisa Torres                                                      Page 4
July 6, 2023

Re:    *United States v. Jamil Hakime*, 22 Cr. 699 (AT)

**B.     A term of time served will satisfy all the purposes of sentencing.**

Here, a sentence of time-served will satisfy all the purposes of sentencing:

*Punishment*: As described above, Mr. Hakime has endured a brutal eight months at the MDC, an experience which has been far more punitive than necessary. In addition, the Court can consider the extensive collateral consequences of this conviction. *See generally United States v. Nesbeth*, 188 F. Supp. 3d 179 (E.D.N.Y. May 24, 2016) (imposing a non-incarceratory sentence after taking into account the many collateral consequences of a felony conviction). "As Professor Michelle Alexander has explained, 'myriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of "civil death" and send the unequivocal message that "they" are no longer part of "us."'" *Id.* at 180 (quoting Michelle Alexander, *The New Jim Crow*, p. 142 (2010); *cf. Utah v. Strieff*, 579 U.S. 232, 253 (2016) (Sotomayor, J. dissenting) (explaining how a criminal record results in the "'civil death' of discrimination by employers, landlords, and whoever else conducts a background check.").

To the extent the Court disagrees, however, and finds that additional punishment is necessary, we respectfully request that the Court impose an additional six-week term of home detention. Because the advisory guidelines-range here is in Zone C of the Sentencing Table, such a "split sentence" falls within the applicable guidelines-range. *See* U.S.S.G. 5C1.1(d); PSR ¶ 88.

*Deterrence*: This is the first time Mr. Hakime has been incarcerated since 1990, over thirty years ago. As Mr. Hakime writes in his letter, this searing experience has been one of shame, guilt, and trauma, and he will never do anything to again jeopardize his freedom. *See* Exhibit A. Additional incarceration is also not required for the purpose of general deterrence, "a phenomenon that is notoriously difficult (and perhaps impossible) to measure," see *United States v. Brady*, 2004 WL 86414, at *9 (E.D.N.Y. Jan 20, 2004). Evidence-based studies strongly support the conclusion that it is the *certainty* of being prosecuted rather than the severity of punishment that deters crime. *See* Nat'l Inst. of Just., *Five Things About Deterrence*, available at http://nij.gov/five-things/pages/deterrence.aspx.[4] Mr. Hakime's arrest, conviction, and incarceration will serve as a cautionary tale for anyone contemplating similar conduct.

*Incapacitation*: Mr. Hakime poses no risk to any person, and does not need to be incapacitated for any reason. Once released, he and Ms. Market will pick up the pieces of their lives and begin laying the foundation for their future.

*Medical Care*: Mr. Hakime suffers from sleep apnea, a serious but treatable illness. While

---

[4] The National Institute of Justice describes the "Five Things" series as a distillation of "what we know from years of rigorous scientific inquiry," summarizing an "abundance of research, analysis, testing and evaluation." *See* Nat'l Inst. Just., *NIJ "Five Things" Series*, available at: http://nij.gov/five-things/Pages/welcome.aspx.

Honorable Analisa Torres                                                      Page 5
July 6, 2023

Re:      *United States v. Jamil Hakime*, 22 Cr. 699 (AT)

Mr. Hakime has been provided with the requisite CPAP machine, it requires distilled water in order to work properly, which the MDC has not been able to provide with regularity. Mr. Hakime should not be subject to the vagaries of a dysfunctional institution which cannot provide the most basic care for someone with his condition, and the need for the sentence imposed to provide effective medical care strongly supports the imposition of the requested sentence. *See* 18 U.S.C. § 3553(a)(2)(D).

* * *

Jamil Hakime well recognizes the harms caused by firearms in our society. He is extremely ashamed and remorseful to have participated in this offense, and will do everything in his power to make amends. For the reasons described above, we respectfully request that the Court impose a term of time served, to be followed by a two-year term of supervised release. Here, such a sentence will be sufficient, but not greater than necessary to satisfy the purposes of sentencing.

Respectfully submitted,

/s/ _____
Martin Cohen
Ass't Federal Defender
(212) 417-8737

cc:      Mitzi Steiner and Sarah Kushner, Esqs., by ECF

Exhibit A

June 28, 2023

Dear Judge Torres,

During my incarceration, I've had time to think about the crime I committed and the collateral consequences of my conviction, which will last for all time in the archives for all to see. The shame and guilt I bear cannot be expressed in so many words, except to say that I am truly sorry. During my time at MDC Brooklyn, I lost my mother and father to old age, in addition to losing a civil service job attached to a pension. I also lost the respect that I have worked so hard to earn during my career at the Administration for Children's Services. But there is no one but myself to blame for my being here, and I am completely ashamed and sorry for my actions.

The reality of prison life in a place that can only be characterized as Dante's Inferno has impacted me never to return. As I reflect upon the unconstitutionality of having no running water for 12-hour periods while locked in a cell with another inmate, I can say that my experience at MDC Brooklyn has been nothing short of traumatizing. The healthcare practice at MDC Brooklyn is also inadequate. I suffer from sleep apnea, which is an involuntarily cessation of breathing during sleep that extends from 10-30 seconds at a time and repeats during the night. A CPAP machine was ordered for my condition, but it was given to me without a sleep study evaluation to determine the severity of my condition. The CPAP machine requires distilled water for proper operation, but unfortunately, the water isn't provided during lockdowns, which puts my life at risk.

My goal moving forward will be to seek professional help to address my conduct in this case and the trauma of incarceration, and to work hard to reconfigure my life in a positive trajectory. Despite the challenging environment around me, I have done what I can to begin to better myself while I am still incarcerated. I have read six or seven books about the real estate business and industry, and plan to continue to read more. When I am released, I plan to immerse myself in real estate development, where I believe I will be able to build a successful future.

In summary, I learned a huge impactful lesson from my arrest and incarceration, which has been in contrast with the ideals of life, liberty, and the pursuit of happiness. My raison d'être is that according to Alexis De Tocqueville, "freedom is indeed a priceless gift, but very few are worthy of enjoying it." I am determined to live the rest of my life as a man who is worthy of that priceless gift.

Sincerely,
Jamil Hakime

Exhibit B

June 4, 2023

The Honorable Analisa Torres

Dear Judge Torres,

My name is Irene Market. I am Jamil's partner of over 5 years. I currently work as Computer Systems Manager for the Administration for Children's Services, managing and administering applications designed for their operations. In my free time, I have always enjoyed giving back to my community. I am currently working as a volunteer with the New York City Community Emergency Response Team (NYC CERT). I have been trained in basic response skills to help in the event of an unexpected disaster in the city, such as Hurricane Sandy.

I remember when I first met Jamil. It was outside my office in downtown Manhattan, and he struck up a conversation with me. From the start I liked him because he was a very eloquent and caring gentleman. He was proficient in multiple languages and was genuinely interested in helping his community. He asked me about my family, my childhood, and my plans for the future. As I began to see more of him, I realized that I was always looking forward to our conversations and would be so elated when I was talking to him again.

He has always been an engaging person and great conversationalist. He makes people know that he's genuinely interested in hearing about them and what they have to say. Jamil is very generous and caring. When his coworker's aunt got sick, he would take her to the aunt's house to make sure she was ok and taken care of. Jamil will make sure of that for people around him. He is always willing to go out of his way and help out. Jamil is always asking what he can do to help and checking in on them.  When I had foot surgery, he took me to the hospital and picked me up afterward. During my recovery, he made sure that I could get where I needed to go.

Jamil is also the type to never give up no matter how much adversity he is facing. His childhood was not easy, as his father abandoned him and his mother left him to fend for himself early in life.  Only in the past years could we reestablish a connection to bring the family together as one again.

We are both interested in housing development and real estate. When we purchased a house together, he spent countless hours and dedicated effort in building our home, updating and fixing anything that needed to be repaired to make it a beautiful and exceptional. Even though he is very athletic, the struggle with his sleep apnea has made doing those things he's done his whole life sometimes challenging. The aftereffects of an injury sustained from a car accident are cause him pain and sometimes make it difficult to move. But Jamil of course will not give up because he believes in mind over matter and the power of positive thinking. He exercises at home and won't let pain stop him. With his support, energy, and resourcefulness we could create a wonderful home filled with love, beauty, and serenity.

At the same time, Jamil is not invincible. The stress of this case, the fact that both his parents passed away just during the time of his incarceration on top of his health issues have weighed on him heavily. But he also knows he needs to keep moving forward because he takes responsibility for his mistakes.  He deeply regrets his actions and I know that he will never make such mistakes again.

I know him to be a man of his word and I trust him with my life. He is determined to better his life and return to society using his exceptional skills as great communicator to help build a peaceful productive life and a beautiful future for us and those around us.

I believe Jamil has a bright future ahead if given the chance. We have a built a wonderful relationship and I truly care for him as the love of my life. He is also as my best friend, and I will continue to give Jamil positive guidance.  I truly believe Jamil recognizes and deeply regrets the poor choices he has made and, if given the opportunity, he will work hard to leave his past behind him for bigger and better outcomes in life.

No matter what happens, I will always be there for him.

Sincerely,
Irene Market