# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

July 17, 2023

*By ECF and by e-mail*

Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

Re:     *United States v. Jamil Hakime*, 22 Cr. 699 (AT)

Dear Judge Torres:

As we described in our sentencing submission, Jamil Hakime engaged in very serious criminal conduct, for which he is extremely remorseful. *See* Dkt. No. 33. In the Government's submission however, it asks the Court to sentence Mr. Hakime for offenses that he did not commit, offenses that he was *never even charged* with. The Court should reject this request and, for the reasons described in our submission, sentence Mr. Hakime to a term of time served.

Mr. Hakime pleaded guilty to a conspiracy to transport a firearm across state lines. In his plea allocution, Mr. Hakime explained that he drove two people to Pennsylvania for the purpose of selling them a gun, and then drove them back to New York, where he dropped off the passengers (and the gun). Mr. Hakime had no knowledge of what the passengers intended to do with the gun. This is the serious conduct that Mr. Hakime has admitted to, and for which he is being sentenced.

According to the Government though, one of the passengers in the car – Mr. Brown – had posted threats online targeting the New York Jewish community, and was a "Nazi" who "hated Jews." (In the same post-arrest statement cited approvingly by the Government in its submission, Mr. Brown denied any plan to act on his threats, which he stated were meant to be provocative.)

The Government then asserts, with no supporting evidence, that Mr. Hakime must have been part of this purported plot and should therefore receive a massive upwards variance for his involvement in it. But there is no indication whatsoever that Mr. Hakime had any knowledge of Mr. Brown's "antisemitic agenda." There is no evidence that Mr. Hakime in any way shared that agenda. Indeed, all evidence is to the contrary: his partner is a practicing Jew, and their home in the Poconos is filled with Judaica. In my discussions with Ms. Market, she told me that in the five years of their relationship, Mr. Hakime had never demonstrated even an inkling of anti-semitism; had he done so, it would have instantly ended their relationship. Instead, as she wrote in her letter, he is the "love of my life." *See* Dkt. No. 33, Ex. A. (Mr. Hakime's father is also Jewish.)

Honorable Analisa Torres                                                           Page 2
July 17, 2023

Re:      *United States v. Jamil Hakime*, 22 Cr. 699 (AT)

On the day the Government arrested Mr. Hakime, it searched his home in Pennsylvania. There, the government found no evidence of any involvement in anti-semitic activity, no involvement in making threats against others, and no evidence of additional firearms trafficking, which is the other uncharged conduct for which the Government is seeking an upwards variance.

The government asserts, for example, that Mr. Hakime – after learning of the passengers' arrest – sought to conceal evidence of firearms trafficking. In support of this, they note that Mr. Hakime left the apartment where he had been staying in Manhattan with filled garbage bags, which he put into his car, and then drove to Pennsylvania. But these bags did not contain evidence of firearm trafficking, but instead contained Mr. Hakime's clothing and other belongings. Again, the government did not find any evidence of additional gun trafficking after it searched Mr. Hakime's home in Pennsylvania, and did not charge Mr. Hakime with such trafficking. Mr. Hakime's sentence should not be enhanced based on these uncharged and unproven allegations.

On July 10, 2023, the Government e-mailed the Probation Office with additional offense conduct to be included in the PSR, conduct which had not been included in the draft report. *See* PSR p. 24 (indicating that four new paragraphs were added, and five were revised). These paragraphs largely mirror the Government's attempt in the submission to connect Mr. Hakime to his passengers' antisemitic agenda. But as the Probation Officer noted, "the Government provided no information that Hakime was aware" of Mr. Brown's purported plot against synagogues." PSR ¶ 10. I don't believe I was copied on the Government's e-mail, and had no opportunity to object before the PSR was finalized on July 11, 2023. Accordingly, attached as Exhibit A are my objections to the revised PSR.

* * *

The crime that Jamil Hakime actually committed is itself very serious, without being further larded up by the Government. As described in our submission though, there are significant mitigating factors, including Mr. Hakime's background and characteristics, as well as the brutal conditions of his current confinement, that support the imposition of a term of time served. As noted, if the Court includes a six-week term of home detention, such a sentence will fall within the applicable Guidelines range.

Respectfully submitted,

/s/ _____
Martin Cohen
Ass't Federal Defender
(212) 417-8737

cc:      Mitzi Steiner and Sarah Kushner, Esqs., by ECF

Exhibit A

**Objections to the Presentence Report**

- *Paragraph 10*: I request the deletion of the second and third sentences, which read: "The night before and on the day of their arrests, Brown posted on Twitter that he planned to 'shoot up a synagogue' and that 'This time I'm really gonna do it.' The threat that Brown and Mahrer posed to the Jewish community in Manhattan was disrupted when they were arrested at Penn Station in Manhattan late at night on November 18, 2022, as described below."

  - Deletion is proper because there is no evidence that Mr. Hakime was aware of the threat, and this inflammatory language is unnecessary to provide an overview of the investigation into Mr. Hakime.

- *Paragraph 11*: I request the deletion of the phrase "in furtherance of their attack plot" in the first sentence.

  - Deletion is proper because this language inappropriately suggests that Mr. Hakime had knowledge of Mr. Brown's purported plot.

- *Paragraph 12*: I request the deletion of the phrase "for potential use in carrying out the attack."

  - Deletion is proper because this language inappropriately suggests that Mr. Hakime had knowledge of Mr. Brown's purported plot.

- *Paragraph 12*: I request deletion of the third sentence concerning Mr. Brown's possession of a large hunting knife and a Nazi Swastika arm band.

  - Deletion is proper as there is no connection between Mr. Hakime and these items.

- *Paragraph 18*: I request the deletion of the last sentence referencing the hunting knife and Swastika arm band.

  - Deletion is proper as there is no connection between Mr. Hakime and these items.

- *Paragraph 22*: I request the deletion of the third sentence, which reads: "CC-4 conveyed that, as a result, CC-4 had to pack up items and evidence associated with HAKIME and his firearms trafficking activities that were located in the building, in an effort to avoid law enforcement detection."

  - I have listened to a recording of this call. It does not support the quoted assertion, and accordingly should be deleted from the report.